# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# LAREDO DIVISION

| | | |
|---|---|---|
| **SAN JUANA RODRIGUEZ,** | § | **CIVIL ACTION** |
| **Plaintiff** | § | |
| | § | |
| **VS.** | § | |
| | § | **NO. 5:15-CV-292** |
| **LAREDO TEXAS HOSPITAL** | § | |
| **COMPANY, L.P., d.b.a. LAREDO** | § | |
| **MEDICAL CENTER,** | § | **JURY REQUESTED** |
| **Defendant** | § | |

## SECOND AMENDED COMPLAINT

### Jurisdiction and Venue

1. This action alleges claims of denial of Family and Medical Leave Act ("FMLA") leave and retaliation codified at 29 U.S.C. §§2611 et. seq.  The Court has jurisdiction, as codified in the remedial legislation listed above and under 28 U.S.C. §§ 1331 and 1343.

2. No conditions precedent are required to be exhausted or performed prior to the filing of this complaint.  Rodriguez files this Complaint within the two-year statute of limitations.

3. The acts or omissions, which serve as the basis for this cause of action, occurred in Webb County, State of Texas and in this Division of the Southern District of Texas; therefore venue is proper in this Court. 28 U.S.C. §1391(b) and (c).

### Parties

4. Plaintiff San Juana Rodriguez ("Rodriguez") is a natural person whose primary residence is located in Webb County, Texas.  Rodriguez may be contacted through her attorney of record in this cause.

5. Defendant, Laredo Texas Hospital Company, L.P., d.b.a. Laredo Medical Center (hereinafter referred to as "LMC") is a limited partnership, with the General Partner being Webb

Hospital Corporation, formed in Texas and its principal place of business is located in Laredo, Webb County, Texas. LMC may be served through its counsel of record, Chris M. Knudsen, SERPE JONES ANDREWS CALLENDER & BELL, PLLC, America Tower, 2929 Allen Parkway, Suite 1600, Houston, Texas 77019, cknudsen@serpejones.com.

## STATEMENT OF THE CASE

6. Rodriguez alleges that she was denied FMLA leave and retaliated against by LMC, her employer, for asserting her leave entitlement under the FMLA because of a serious health condition that made her unable to perform the functions of her job for a limited period of time.

7. Rodriguez was an employee of LMC for approximately 20 years.  Prior to being denied FMLA leave and retaliated against, Rodriguez was employed for at least 1,250 hours of service during the preceding 12 months and worked at a worksite with 50 or more employees.

8. LMC is a private sector employer engaged in an industry affecting commerce, who employs over 50 employees for each working day during each 20 or more calendar workweeks in the current year.

9. Following LMC's denial of FMLA leave and Rodriguez's exercise of her right to take FMLA leave, despite LMC's denial of her request for that leave, LMC began to harass her to the point of creating a hostile work environment so pervasively against Rodriguez resulting in substantially changing Rodriguez's terms and conditions of employment and negatively impacting her physical and emotional health to the extent that Rodriguez was forced to quit her position in constructive discharge to protect not only her health but also the health of the patients.

## FACTUAL ALLEGATIONS

10.  Rodriguez began her employment at LMC on or about July 1993 as a phlebotomist. Her duties consisted of drawing blood, collecting mucous samples, collecting breath alcohol samples, collecting DNA samples, performing drug screens, and performing EKGs from ambulatory patients at the LMC South outpatient clinic.   Rodriguez' work schedule was regularly from 7:00 am to 5:00 pm, Monday through Friday and occasionally on Saturdays from 7:00 am to noon.

11.  During the months of September through December 2013, Rodriguez suffered from a medical condition that impaired her vision and required urgent surgical intervention as prescribed by her doctor.  During this time, Rodriguez would schedule office consultations with her physician for treatment of her medical condition; however, Rodriguez's supervisor, Irma Buentello ("Buentello") would deny her leave requests.

12.  On or about, December 04, 2013, Rodriguez requested leave qualifying under the Family Medical Leave Act and informed her immediate supervisor Buentello that her insurance provider had approved the surgical procedure and that her physician had scheduled the surgery on December 09, 2013.  Rodriguez' physician faxed an order and proof of the scheduled surgery to Buentello on December 05, 2013 at Rodriguez's request.  . Rather than grant the requested and justified leave, Buentello verbally informed Rodriguez on December 06, 2013, that her request had been denied by LMC's Human Resources Office.  Buentello did not provide any explanation for the denial of Rodriguez's request for leave for her surgery.

13.  Due to the urgency and gravity of her medical condition and despite Buentello telling her that her FMLA leave request had been denied, on December 08, 2013, Rodriguez faxed her notice of intent to take FMLA leave to LMC's Laboratory Director, Edna Soliz

("Soliz"); the next level above Buentello in Rodriguez's chain of command.  Rodriguez's faxed letter advised Soliz of the urgency of her medical condition, how it impaired her from performing her job functions, and also made Soliz aware that her requested leave had been denied by LMC's HR as communicated to Rodriguez by Buentello.  Rodriguez did not receive a response to this communication prior to her scheduled surgery.

14.  Rodriguez underwent surgery on December 09, 2013, and returned to work on or about December 12, 2013.

15.  Buentello's and Soliz's treatment and attitude towards Rodriguez changed adversely upon Rodriguez' return to work following her FMLA qualifying leave creating a hostile work environment against Rodriguez.   Rodriguez's terms and conditions of her work were substantially and detrimentally altered in the following ways, including but not limited to:

a) forcing Rodriguez to treat an unethically and unmanageably large number of patients by herself at the LMC South outpatient clinic, which she had never before had to do.  The number of patients she would normally have to treat prior to her surgery were on average approximately 35 patients per day with the help of a co-worker.  After returning from FMLA leave, Rodriguez was scheduled to work alone on many instances and the average number of patients became an average of 35 to 50 per day without the help of a co-worker.

b)  forcing Rodriguez to work abnormally extended hours before taking lunch due to the substantially increased workload that had never been assigned to Mrs. Rodriguez prior to her need for FMLA leave, which she had never before had to do.  The number of hours she would normally have to work prior to her surgery

were on average 4 and at most 5.  After the surgery, the average number of hours

became approximately 5 to 6.5.

c) reprimanding Rodriguez without just cause, that is for pretextual reasons.  For

example, on several occasions Buentello called Rodriguez while she was

working alone and overburdened with patients to verbally reprimand her because

she was allegedly moving too slow and/or because patients were allegedly

complaining that they were waiting too long for her.  In one instance, a person

entered the blood draw area without authorization while Rodriguez was alone

processing that morning's blood samples.   For safety and privacy reasons,

Rodriguez asked the person to leave the area until after Rodriguez returned from

lunch but the patient refused to leave and became belligerent.   Instead of

supporting Rodriguez in the enforcement of privacy and security policies, Soliz

reprimanded Rodriguez and directed Rodriguez to postpone her lunch hour until

after she had attended and processed that patient.

d) changing Rodriguez's schedule to work on days she had previously asked and

been approved to be scheduled off (this had not previously happened to

Rodriguez and was not standard practice),

e) changing Rodriguez's work schedule to work on the Sunday 3:00 am to 12:00 pm

shift when she had never worked Sundays or the 3:00 am shift prior to her need

for FMLA leave,

f) changing Rodriguez's duties and responsibilities by scheduling and assigning her

to make rounds at the hospital without prior training or orientation (in regards to

critically ill and unresponsive patients).  Rodriguez had not been hired in this

capacity and had never been assigned to work at the hospital prior to her taking her FMLA qualifying leave. Rodriguez's duties at the hospital were significantly different than her duties at the clinic and which had negative and potentially negative consequences, to include for example, but not necessarily limited to:

i. treating critically ill and unresponsive patients who require different protocols and present greater risks of adverse consequences;

ii. treating patients diagnosed with infectious diseases who required different protocols and present greater risks of adverse consequences;

iii. Not being familiar with the hospital floors that in turn made it difficult to respond to patients that required strictly scheduled blood draws;

iv. Not being familiar with hospital protocols pertaining to certain blood exams that could result in negative consequences to the patient or the subject medical test; and

v. not receiving any orientation and training despite asking for it prior to and while being assigned to work at the hospital thus presenting untold risks to Rodriquez and the patients.

g) These new responsibilities and duties created increased stress due to the potential liability issues associated with the health of patients that she was not trained to treat or otherwise work with.

16.  LMC's harassing and retaliatory treatment of Rodriguez deteriorated her physical and emotional health by causing Rodriguez's blood pressure to be abnormally high and pushed her into depression.

17. Fearing for her health and wellbeing, these deteriorating health effects forced Rodriguez to resign her position in constructive discharge on or about January 17, 2014, in an attempt to avoid suffering further serious health consequences to herself and possibly the patients as a result of LMC's retaliatory mistreatment.

18. Rodriguez suffered and continues to suffer economic and non-economic damages as a result of LMC's denial of FMLA leave to Rodriguez and retaliation against Rodriguez for asserting her right to FMLA qualifying leave.

## DAMAGES

19. Because of statutorily impermissible and willful, if not malicious, acts of LMC and its representatives, Rodriguez has suffered loss of income, loss of benefits, loss of career opportunity, loss of career investment, and loss of advancement.  As a consequence of the unlawful and outrageous actions of LMC, Rodriguez has suffered humiliation, loss of standing in the community, emotional pain and suffering, inconvenience, loss of enjoyment of life, irritation and mental anguish.  Rodriguez seeks recovery compensatory, reliance, expectation, and equitable (i.e., back pay and front pay) damages, expert witness fees, attorney's fees, liquidated damages, equitable relief, and costs and pre and post judgment interest in the maximum amounts allowed by law.

## RELIEF REQUESTED

Paragraphs one (1) through nineteen (19) of this complaint are incorporated by reference and made a part of Relief One through Relief Five, inclusive.

## EQUITABLE RELIEF

### Relief One

Rodriguez seeks an award of back pay and front pay for the loss of income as a result of LMC's denial of FMLA qualifying leave and retaliation for having exercised her right to FMLA leave resulting in a hostile work environment leading to Rodriguez's constructive discharge.

### Relief Two

Rodriguez is entitled to awards of pre- and post-judgment interest on any amounts awarded to her.

## LEGAL RELIEF

### Relief Three

Rodriguez is entitled to compensatory, expectation, and/or consequential damages due to the illegal conduct of LMC as alleged herein.

### Relief Four

Rodriguez is entitled to liquidated damages.

### Relief Five

Rodriguez is entitled to reasonable attorneys' fees and expert witness' fees and costs.

## PRAYER FOR RELIEF

Rodriguez requests the Court to cause LMC to be cited to appear and answer in this Court, and that upon final hearing, the Court grant to Rodriguez as follows:

1. Grant Rodriguez all equitable damages including back pay, front pay, benefits and profits;

2. Grant Rodriguez compensatory damages for LMC's acts of discrimination and retaliation against her;

3. Grant Rodriguez liquidated damages in the highest lawful amount;

4. Grant Rodriguez pre & post-judgment interest in the highest lawful amount;

5. Grant Rodriguez reasonable attorney's fees, together with expert witness' fees and costs; and

6. Such other and further relief as the Court determines justice and equity so require.

Respectfully submitted,

_/s/ Robert Notzon_
Robert Notzon
The Law Office of Robert Notzon
Texas Bar No. 00797934
Federal I.D. No. 29758
1502 West Avenue
Austin, Texas 78701
(512) 474-7563
(512) 852-4788 facsimile
Robert@NotzonLaw.com
ATTORNEY FOR RODRIGUEZ

**CERTIFICATE OF CONSENT**

I hereby certify that Defendant Laredo Texas Hospital Company, L.P., d.b.a. Laredo Medical Center has consented in writing to the filing of this second amended complaint. See attached Ex. 1-Email consent.

_/s/ Robert Notzon_
Robert Notzon

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing instrument has been served on March 29, 2016 via ECF service on the following parties via the method indicated:

Chris M. Knudsen
SERPES JONES ANDREWS CALLENDER & BELL
2929 Allen Parkway, Suite 1600
Houston, TX 77019
Email: CKnudsen@SerpeJones.com
Attorneys for LMC

_/s/ Robert Notzon_
Robert Notzon

# EXHIBIT 1

 **Gmail**

**Robert S. Notzon <robertsnotzon@gmail.com>**

---

## Rodriguez Amendment

---

**Chris Knudsen** <CKnudsen@serpejones.com>                     Tue, Mar 29, 2016 at 9:16 AM
To: "Robert S. Notzon" <robert@notzonlaw.com>, Luis Landeros <luis@landeroslawfirm.com>, Ben Feiler
<BFeiler@serpejones.com>

Robert:


I spoke to my client. I have permission to consent to a substitution of Laredo Texas Hospital Company,
LP *in place of* Webb Hospital Corporation. It would make the amendment cleaner from the hospital's
perspective. Also, I can accept service on behalf of Laredo Texas Hospital Company, LP.


Give me a call if you would like to discuss.


Chris

---

**From:** robertsnotzon@gmail.com [mailto:robertsnotzon@gmail.com] **On Behalf Of** Robert S. Notzon
**Sent:** Monday, March 28, 2016 8:49 AM
**To:** Chris Knudsen; Luis Landeros; Ben Feiler
**Subject:** Rodriguez Amendment


Following up on the Court's advisory from last week and reviewing our communications ahead of our
amendment, I see that I have your lack of opposition to the amended complaint in writing, but not your "consent"
in writing.  The Court apears to require your consent to the amendment. Understanding that your clients dispute
liability in the case, do you consent to the amended complaint that we filed on behalf of Rodriguez in this case?
Thanks.

[Quoted text hidden]