United States District Court
Southern District of Texas
**ENTERED**
February 10, 2017
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| SAN JUANA RODRIGUEZ, | § | |
| | § | |
| Plaintiff | § | |
| VS. | § | CIVIL ACTION NO. 5:15-CV-292 |
| | § | |
| WEBB HOSPITAL CORPORATION, *et al.*, | § | |
| | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

In the weeks following her eye surgery, Plaintiff San Juana Rodriguez resigned her job as a phlebotomist. She later sued her former employer, Defendant Laredo Medical Center,[1] alleging that Defendant violated the Family and Medical Leave Act (FMLA) by retaliating against her for taking three days of medical leave for her eye surgery.

Defendant has moved for summary judgment on all of Plaintiff's claims. Because the Court concludes that Plaintiff did not suffer an adverse employment action, the Court **GRANTS** Defendant's Motion for Summary Judgment. (Dkt. No. 21). Additionally, Plaintiff's Motions to Compel (Dkt. Nos. 36, 41) are **DENIED**, Defendant's Motion to Strike (Dkt. No. 39) is **GRANTED**, and Defendant's Objections to Plaintiff's Summary Judgment Evidence (Dkt. No. 34) are **DENIED** as moot.

---

[1] Laredo Medical Center is a limited partnership, with the general partner being Defendant Webb Hospital Corp.

## I. BACKGROUND

Plaintiff began working for Defendant as a phlebotomist over twenty years ago in 1993. (Dkt. No. 1 at 2). For almost all of that time, she worked exclusively at Defendant's south outpatient clinic (South Clinic). (*Id.* at 3). Her duties consisted mainly of drawing blood and collecting other types of medical samples. (Dkt. No. 33-1 at 6:11–21). Over the years, however, the amount of patients coming into South Clinic slowly decreased, resulting in a corresponding decrease from six phlebotomists in 1993 to two phlebotomists in 2013. (Dkt. No 21-1 at 17:21–22; 22:24–25).

Sometime in August or September 2013, several changes were made to the management structure at South Clinic. The director and supervisor were removed, and Plaintiff and her co-worker Angie Bustamante (the only two phlebotomists remaining) came under the supervision of Defendant's Laboratory Department, which was headed by Edna Soliz and Irma Buentello. (Dkt. No. 21-2 at 6–7). This change in management brought corresponding changes to Plaintiff's schedule. Buentello began scheduling Plaintiff to work Saturday shifts and to work shifts in the main hospital, things that she had never done before. (Dkt. No. 21-1 at 28–29).

Around the same time as the management change, Plaintiff began suffering from an eye condition that caused excessive swelling and tearing of the eyes. (Dkt. No. 33-1 at 12:4–19). Plaintiff underwent treatment for the condition, but to no avail. (Dkt. No. 33-5). The condition worsened, and her doctor soon recommended surgery, which he scheduled for Thursday, December 9, 2013, and instructed Plaintiff not to return to work until Monday, December 12. (Dkt. No. 33-1 at 16–

18).  Plaintiff informed Buentello that she planned on taking FMLA leave for the surgery, but Buentello asked Plaintiff if she could push the surgery back a week because she had already set the schedule for those days.  (Dkt. No. 33-6 at 12–13).  Plaintiff refused to do so and took her FMLA leave.  Upon returning to work on the 12th, she found her same job waiting.  (Dkt. No. 21-1 at 48:23–49:5).  She was not terminated, demoted, or reprimanded in any way (*Id.* at 52:4–17), and she continued to receive the same pay.  (Dkt. No. 21-3 at ¶6).

After her return, however, Plaintiff noticed several changes to her working conditions.  For example, she claims that she was required to work alone in South Clinic more often.  (Dkt. No. 21-16 at 7–9).  On these occasions, if Plaintiff felt overwhelmed, she would call Buentello to ask for help, but Buentello would tell her "no" without attempting to see if anyone was available.  (Dkt. No. 33-1 at 22:11–15).  Buentello also took one day of her approved vacation away during New Years.  But this day was quickly restored after Plaintiff brought it to Buentello's attention.  (Dkt. No. 21-1 at 60:2–16).  The final change in her work life came on Sunday, January 5, 2014, when Buentello scheduled Plaintiff for the 3:00 a.m. blood-collection shift on the hospital floors that treated critically-ill patients.  Plaintiff described this shift as "the worst experience of her life," and subsequently submitted her two weeks' notice the next day, indicating that her last day of work would be January 17.  (*Id.* at 61–63).

On December 17, 2015, nearly two years later, Plaintiff filed this lawsuit against Defendant alleging that Defendant interfered with her FMLA rights and

changed her working conditions in retaliation for taking FMLA leave—changes that also created a hostile work environment and resulted in her constructive discharge.

## II. STANDARD OF REVIEW

Summary judgment is appropriate if the moving party has shown that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009). The dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All evidence is viewed in the light most favorable to the non-movant. *Miller v. Metrocare Servs.*, 809 F.3d 827, 832 (5th Cir. 2016).

The initial burden is on the movant to point to portions of the record which he believes demonstrate the absence of a genuine dispute about a material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has met his initial burden, the burden then shifts to the non-movant to come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elect. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis omitted). When the movant would not bear the burden of proof at trial on a particular claim, he meets his initial burden on summary judgment if he identifies an element of the claim for which the non-movant has produced no evidence. *See Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 913 (5th Cir. 1992).

Although the court draws all reasonable inferences in favor of the non-

movant, the non-movant "cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.'" *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).  Conjecture and speculation do not satisfy the non-movant's burden. *Little*, 37 F.3d at 1079.

## III. ANALYSIS

Congress enacted the FMLA to permit eligible employees "to take reasonable medical leave for medical reasons." *Elsensohn v. St. Tammany Par. Sheriff's Office*, 530 F.3d 368, 372 (5th Cir. 2008) (per curiam) (citing 29 U.S.C. § 2601(b)(2)).  The FMLA contains two sets of provisions.  The first set is prescriptive and creates a set of substantive rights that employers cannot interfere with.[2]  *Id.*  The second set is proscriptive and protects employees from retaliation based on the exercise of those rights.[3]  *Id.*  In her original Complaint, Plaintiff asserted violations of both the FMLA's interference and retaliation provisions.

### A. Interference Claim

In order to succeed on a FLMA interference claim, a plaintiff must prove that "(1) [s]he was an eligible employee, (2) [the employer] was subject to the FMLA's requirements, (3) [s]he was entitled to leave, (4) [s]he gave [the employer] proper notice of [her] intention to take FMLA leave, (5) [the employer] interfered with the benefits to which [s]he was entitled under the FMLA, and (6) [s]he was prejudiced

---

[2] "It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of the attempt to exercise, any right provide under this subchapter."  29 U.S.C. § 2615(a)(1).

[3] "It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter."  29 U.S.C. § 2615(a)(2)

as a result." *McCollum v. Puckett Mach. Co.*, 628 F. App'x 225, 231 (5th Cir. 2015) (per curiam) (citing *Lanier v. Univ. of Tex. Sw. Med. Ctr.*, 527 F. App'x 312, 316 (5th Cir. 2013) (per curiam)).

Defendant argues that Plaintiff cannot establish the fifth and sixth elements of her interference claim.  "The Fifth Circuit has held when a plaintiff receives the requested leave and returns to the job she left, [s]he has no interference claim as a matter of law." *Lister v. Nat'l Oilwell Varco, L.P.*, No. CIV.A. H-11-01, 2013 WL 5515196, at *29 (S.D. Tex. Sept. 30, 2013) (Rosenthal, J.) (citing *De La Garza–Crooks v. AT & T*, No. 00–50969, 2001 WL 361099, at *1 (5th Cir. Mar. 22, 2001) (per curiam)).  Here, Plaintiff received her requested FMLA leave from December 9–11 and returned to work on December 12 to her same position without any demotion, probation, write up, or change in pay or benefits.  Thus, as a matter of law, Plaintiff's interference claim fails.  Indeed, Plaintiff seemingly admits this since she does not contest Defendant's argument and removed the interference claim in her amended Complaint.  Therefore, the Court **GRANTS** summary judgment in favor of Defendant on the interference claim.

### B. Retaliation Claim

In the absence of direct evidence, as is the case here, a FMLA retaliation claim is analyzed under the *McDonnell Douglas* burden-shifting framework.  That framework requires an employee to show that (1) she was protected under the FMLA, (2) she suffered an adverse employment action, and (3) the adverse action was taken because she sought protection under the FMLA. *Ion v. Chevron USA, Inc.*, 731 F.3d 379, 390 (5th Cir. 2013).  The burden then shifts to the employer to

produce a legitimate nonretaliatory reason for the adverse employment action. *McArdle v. Dell Prod., L.P.*, 293 F. App'x 331, 336 (5th Cir. 2008).  Then, to survive summary judgment, the employee must offer sufficient evidence to create a genuine issue of fact that the employer's proffered reason "is merely a pretext for retaliation or, 'although true, is but one of the reasons for its conduct, another of which was discrimination.'"  *Garcia v. Penske Logistics, L.L.C.*, 165 F. Supp. 3d 542, 558 (S.D. Tex. 2014) (Marmolejo, J.) (quoting *Richardson v. Monitronics Intern., Inc.*, 434 F.3d 327, 333 (5th Cir. 2005)).

Defendant attacks all three elements of Plaintiff's prima facie case.  The Court need only address the second element as the record, even when viewed in the light most favorable to Plaintiff, conclusively demonstrates that she did not suffer an adverse employment action.

Traditionally, adverse employment actions were limited to ultimate-employment decisions, such as hiring or firing.  But since the Supreme Court's decision in *Burlington Northern Santa Fe Ry. v. White*, 548 U.S. 53 (2006), an adverse employment action includes those that a reasonable employee would have found materially adverse, which in this context means any action that would "dissuade a reasonable employee from exercising his rights under the FMLA." *Lushute v. La. Dept. of Social Services* 479 F. App'x 553, 555 (5th Cir. 2012) (per curiam) (citing *Burlington*, 548 U.S. at 68).[4]  The purpose of this objective standard

---

[4] *Burlington Northern* was a Title VII case, and no precedential Fifth Circuit case has explicitly applied it in a FMLA case.  Yet, several unreported cases dealing with the FMLA have explicitly relied on *Burlington Northern*'s holding, *see, e.g.*, *McArdle*, 293 F. App'x at 337 (applying *Burlington Northern* in the FLMA context because no reason exists to treat identical statutory

is "to separate significant from trivial harms." *Burlington*, 548 U.S. at 68. "Petty slights, minor annoyances, and simple lack of good manners" do not qualify. *Id.*

Here, Plaintiff argues that the following actions constituted adverse employment actions: (1) Buentello scheduled her to work alone in South Clinic more often, subjecting her to a heavier workload and greater stress; (2) Buentello attempted to take away her scheduled day off on December 29, 2013; and (3) Buentello assigned her to the Sunday morning shift on hospital floors that she was not adequately trained to work on.

### 1. Assistance at South Clinic

After returning from FMLA leave on December 12, 2013, Plaintiff had to work nine full days and three half days alone at South Clinic before her last day of work on January 16, 2014. (Dkt. No. 21-16 at 7–9). During these times, she faced a larger workload and increased stress because the patients, who had to wait longer, would become restless. Moreover, when she felt as though she was being overworked, she would call Buentello to ask for assistance, but Buentello would say "no" without even trying to find someone to help.

These circumstances, taken as true, would not dissuade a reasonable employee from exercising FMLA rights. First, Defendant's scheduling records show that from October 28 through December 11 (the time period leading up to Plaintiff's FMLA leave) Plaintiff was scheduled to work 7 full days and at least 12 half days

---

language differently), and one reported case has implicitly done so. *See Wheat v. Fla. Parish Juvenile Justice Com'n*, 811 F.3d 702, 710 (5th Cir. 2016) (noting that the "ultimate employment decision" standard is now abrogated under current law).

alone in South Clinic.  (*Id.* at 3–6).  Hence, the additional two full days that she worked alone post-surgery is hardly a material increase.  In fact, taking into account the half days, Plaintiff actually worked alone less often post-surgery than pre-surgery.

Next, Plaintiff's complaint about Buentello denying her request for help centers around Buentello's manner when doing so.  (Dkt. No. 21-1 at 59:7–15).  Pre-surgery Buentello refused to send help in a more positive manner.  She would say things like "let me see" or "I'll see what I can do."  (*Id.* at 58:18–23).  In other words, Buentello was more pleasant and understanding.  After the surgery, Buentello would simply say "no" to Plaintiff's requests.  (*Id.* at 55:11–15).  This change, however, is simply a petty slight or change of manner that does not justify a retaliation claim.

Finally, on the days Plaintiff worked alone, she concedes that her job duties did not change and her working hours did not increase.  Plaintiff, instead, only alleges that she had to treat more patients per day, which created more stress.  But an increase in workload, without other aggravating circumstances, is not an adverse employment action.  *See Stewart v. Mississippi Transp. Comm'n*, 586 F.3d 321, 332 (5th Cir. 2009) (holding that an increase in workload, without a change of duties, effect on job title, grade, hours, salary, benefits, or an diminution in prestige, was not an adverse employment action); *see also Adams v. McKinney Indep. Sch. Dist.*, No. 4:14-CV-762, 2016 WL 1157011, at *3 (E.D. Tex. Mar. 24, 2016) (holding that a reassignment of job duties, an office change to a remote place in the building,

a loss of support staff, and an uneven increase in workload was not enough, as a matter of law, to state a retaliation claim).

In short, the increase in workload on days Plaintiff worked alone and the manner in which Buentello denied her request for help would not dissuade a reasonable employee from asserting FMLA rights.[5]  This conclusion is bolstered by the fact that in the months following Plaintiff's resignation, Bustamante worked in South Clinic alone every day—treating an equivalent number of patients as Plaintiff had—and stated that her job did not become more difficult or more stressful.  (Dkt. No. 21-18; 33-18 at 6).

### 2. Request for Time Off

Plaintiff was initially approved for a holiday vacation from December 28, 2013, through January 1, 2014.  This approval came pre-surgery, but post-surgery, Buentello changed the schedule to require Plaintiff to work on the 29th.  Yet Buentello fixed the schedule soon after Plaintiff brought it to her attention.  At most, this is a minor annoyance or trivial harm that is not an adverse employment action.

### 3. Sunday Morning Collection Shift

Buentello scheduled Plaintiff to work a single Sunday collection shift at 3:00 a.m.  Plaintiff was assigned to collect blood on hospital floors that treated critically-

---

[5] The Court also notes that it appears Plaintiff has not established the causation element of her prima facie case.  Plaintiff attempts to establish causation by arguing that, from the time of her surgery until her last day, Bustamante only worked alone twice, and the two phlebotomists at North Clinic never worked alone.  But the schedule reflects that this work distribution had been happening since the management change in October.  (Dkt. No. 21-16)  Plaintiff has always worked alone more often than the other phlebotomists.

ill patients.  But Plaintiff had never worked on those hospital floors before, and because of that, she argues that she did not have the proper training to do so. During her shift, Plaintiff attempted to draw blood from 15 patients but was unable to find the veins in 6 of them due to their excessively swollen condition and unconsciousness.  (Dkt. No. 21-1 at 64:11–21).  So she subsequently reported her frustration to the Lab Department, and someone else collected blood from these difficult patients.  (*Id.* at 62:1–8).

Assigning Plaintiff to this Sunday collection shift did not rise to the level of seriousness necessary to establish a materially adverse employment action.  First, while Buentello never assigned Plaintiff to work a Sunday shift before, Buentello did assign Plaintiff to work nine Saturday shifts in the past.  (Dkt. No. 21-16). Although the graveyard shift is clearly undesirable, Plaintiff, as a member of the lab department since October,[6] is not guaranteed shifts due to the hospital's 24 hours, 7 days a week staffing requirements.  (Dkt. No. 21-5 at ¶11).  More importantly, the shift change did not increase Plaintiff's weekly work hours.[7]  And a shift change, without such an increase, is not a materially adverse employment action.  *See Lushute*, 479 F. App'x at 555 (holding that a shift change from a four-day week to a five-day week, with no change in total hour or in compensation, was not a materially adverse employment action).  Second, Plaintiff concedes that her

---

[6] Before October Plaintiff was not a part of the Lab Department, so she was never required to work in the hospital or work graveyard shifts.  That changed, however, under the new management structure.

[7] Plaintiff worked 44.25 hours the week of January 6, including the Sunday hours.  Since Buentello began setting Plaintiff's schedule in October, Plaintiff regularly worked over 45 hours in a week, including the weeks of September 23, October 7, November 10, and November 17.  (Dkt. No. 21-9).

job duty at the hospital was the same as her duty at South Clinic—namely, drawing blood. Plaintiff only argues that the blood drawing was more difficult because of the patients' critical conditions. But Plaintiff was not forced to treat the difficult patients. If she had trouble collecting blood from a patient, Plaintiff informed the front desk of the difficulty, and they would find someone else to do it. Finally, it is undisputed that this was the first and only time that Plaintiff had to work the Sunday morning collection shift on the hospital floors.

Thus, having to work the single Sunday morning shift would not dissuade a reasonable employee from asserting FMLA rights. The shift change did not increase Plaintiff's work hours, involve a change in duties, or force her to treat patients that she felt were beyond her skill level. Even if, as Plaintiff claims, working this shift was "the worst experience of her life," her subjective views are irrelevant to the analysis. *See Aryain v. Wal-Mart Stores Texas, L.P.*, 534 F.3d 473, 485 (5th Cir. 2008) (holding that the plaintiff's subjective preferences cannot transform an action into a materially adverse employment action). The question is how a reasonable phlebotomist of over 20-years' experience would have viewed the shift.

### 4. Summary

Because Plaintiff has not established that she suffered any materially adverse employment actions, she has failed to establish a prima facie case of retaliation. Hence, the Court **GRANTS** summary judgment in favor of Defendant on the retaliation claim.

### C. Hostile Work Environment and Constructive Discharge

The Fifth Circuit has never recognized an independent claim for a hostile work environment in the FMLA context. *See Smith-Schrenk v. Genon Energy Servs., L.L.C.*, No. CIV.A. H-13-2902, 2015 WL 150727, at *4 (S.D. Tex. Jan. 12, 2015) (noting that the court could not find any case were a federal court has recognized a FMLA cause of action based on a hostile work environment). Yet, if the employer created the hostile work environment because the employee took FMLA leave, it can be relevant to determine whether a reasonable employee would be dissuaded from asserting FMLA rights. Even so, Plaintiff points to the same facts discussed above to support her hostile-work-environment argument—facts that the Court has already found are not materially adverse.

Likewise, the test for a constructive-discharge claim is "whether a reasonable person in the plaintiff's shoes would have felt *compelled* to resign." *Haley v. Alliance Compressor, L.L.C.*, 391 F.3d 644, 650 (5th Cir. 2004) (emphasis added). Plaintiff again points to the same facts as in her retaliation claim to support her constructive-discharge claim. Since the Court found that these actions are not materially adverse, the Court concludes that they would not have compelled a reasonable person in Plaintiff's position to resign.

Accordingly, the Court **GRANTS** summary judgment in favor of Defendant on Plaintiff's hostile-work-environment and constructive-discharge claims.

### D. Motion to Compel Discovery

Plaintiff has filed two Motions to Compel Discovery seeking the Court to order Defendant to answer numerous interrogatories and produce various

documents.  Plaintiff also asks the Court to delay its consideration of Defendant's Summary Judgment Motion until the discovery dispute is resolved.[8]

Federal Rule of Civil Procedure 56(d) dictates that a court may defer its consideration of a summary judgment motion when the non-movant shows, by affidavit or declaration, that it cannot present facts essential to justify its opposition.  The non-movant must "set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist and indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion."  *Raby v. Livingston*, 600 F.3d 552, 561 (5th Cir. 2010) (quoting *C.B. Trucking, Inc. v. Waste Mgmt., Inc.*, 137 F.3d 41, 44 (1st Cir. 1998)).  "If it appears that further discovery will not provide evidence creating a genuine issue of material fact, the district court may grant summary judgment."  *Id.* (quoting *Access Telecom, Inc. v. MCI Telecomm. Corp.*, 197 F.3d 694, 720 (5th Cir. 1999)).

The Court has reviewed Plaintiff's discovery requests and concludes that the information requested would not affect the outcome of Defendant's Summary Judgment Motion.  The information Plaintiff seeks relates to the causation element of her prima facie case.  But that information would not affect the Court's adverse-employment-action analysis.  Thus, the Court **DENIES** Plaintiff's Motions to Compel Discovery.

---

[8] The Court notes that the proper procedural vehicle to ask the Court to delay consideration of a summary judgment motion is a Rule 56(d) motion.  FED. R. CIV. PRO. 56(d).  Plaintiff never filed a Rule 56(d) motion, and has instead responded to Defendant's Summary Judgment Motion. However, for the reasons stated in this Section, the Court would have denied a Rule 56(d) motion even if Plaintiff had filed it.

### E. Motion to Strike Sur-Reply

Defendant moves to strike Plaintiff's surreply because Plaintiff did not ask leave of the Court to file it. "Surreplies are heavily disfavored by courts." *Warrior Energy Servs. Corp. v. ATP Titan M/V*, 551 F. App'x 749, 751 n.2 (5th Cir. 2014). Neither the Federal Rules nor the Local Rules provide for the right to file a surreply. Hence, Plaintiff should have requested leave to file and explained why the surreply was appropriate. *See McClyde v. Jackson*, No. CIV.A.H-07-4244, 2010 WL 519763, at *9 (S.D. Tex. Feb. 9, 2010), *aff'd*, 405 F. App'x 891 (5th Cir. 2010) (Ellison, J.) (striking surreply because the party did not obtain leave of the court to file it). But Plaintiff has not done so. Further, she has not responded to Defendant's Motion to Strike, so pursuant to Local Rule 7.4, it is deemed unopposed.

Defendant's Motion is, therefore, **GRANTED,** and Plaintiff's surreply is **STRICKEN**.[9]

### IV. CONCLUSION

For the forgoing reasons, The Court **GRANTS** Defendant's Motion for Summary Judgment (Dkt. No. 21), and all of Plaintiff's claims against Defendant are **DISMISSED WITH PREJUDICE**. Final Judgment in favor of Defendant will be entered in an accompanying order. Additionally, Plaintiff's Motions to Compel are **DENIED** (Dkt. No. 36, 41), Defendant's Motion to Strike is **GRANTED** (Dkt. No. 39), and Defendant's Objections to Plaintiff's Summary Judgment Exhibits

---

[9] Even so, the Court has reviewed the surreply and finds that it presents no probative summary-judgment evidence sufficient to raise a genuine issue of material fact on the adverse-employment-action element.

(Dkt. No. 34) are **DENIED** as moot.

It is so **ORDERED.**

**SIGNED** February 10, 2017.

Marina Garcia Marmolejo
United States District Judge